## G. A. ERWIN v. WESLEY DANIELS.

Decided January 28, 1904.

**1.—Executory Sale—Payment—Time of the Essence.**

Under an executory contract for the sale of land which gives to the vendor a mere option, in case of default in payment, to rescind the sale and treat the payments made as rent, where the parties have not acted on the contract by taking possession, improvements, etc., time is nearly always of the essence of the contract.

**2.—Same—Waiver of Default.**

Where, in an executory contract for the sale of land giving to the vendor the right to rescind on default of payment, the vendor suffers a default to pass without complaint, and treats the contract as continuing, he can revive his right thereafter, only upon notice of his purpose to vendee, allowing him a sufficient time in which to comply.

**3.—Same—Statute of Frauds—Parol Sale of Land.**

A purchaser under an executory contract who, by possession, improvements and part payment, has acquired vested rights in real estate, can not divest himself of such interest by parol.

**4.—Costs—Practice.**

One recovering judgment on amended pleadings and taxed with the previous costs, may, where he is insolvent, be compelled to pay such as a condition of enjoying the relief awarded him.

Appeal from the District Court of Harris. Tried below before Hon. Chas. E. Ashe.

*James A. Breeding,* for appellant.

*Edgar Watkins* and *Frank C. Jones,* for appellee.

GILL, ASSOCIATE JUSTICE.—This suit was brought in the form of an action of trespass to try title by G. A. Erwin against the appellee, Wesley Daniels, its purpose being to rescind an executory contract of sale and recover possession of the land.

Appellee answered averring the contract of purchase, tendered the balance of the purchase money, pleaded waiver and estoppel as to the right to rescind, and prayed for specific performance.

A trial by jury resulted in a verdict and judgment for appellant for the balance of the purchase money and for the appellee for the land. Erwin has appealed and urges under appropriate assignments of error the points upon which he relies for a reversal. The facts established by the verdict are as follows:

In the spring of 1899 the defendant herein, Wesley Daniels, a negro, was a tenant on the lands in controversy then owned by Tom Still. Erwin, the appellant herein, became the purchaser of the lands from Still, and prior to the expiration of the said lease Daniels bought the property from Erwin by an executory contract in writing which was in substance as follows:

Its date was May 1, 1899. The contract price was $600, payable in three equal installments, bearing interest, the first installment of $200

being due November 1, 1899; the second November 1, 1900, and the third November 1, 1901.

It was further provided that if the vendee made the three payments stipulated the vendor should thereupon duly execute him a deed for the land. In case of the failure on the part of the vendee to make either of the payments or perform any of the covenants on his part to be made and performed at the maturity thereof, then the contract might at the option of the first party be forfeited and determined, the second party forfeiting all former payments as rent.

The defendant with his family has lived upon the place since May, 1899.

No payment was made on the purchase money in 1899, nor did plaintiff either demand therefor or exercise his option to rescind. In the spring of 1900 defendant paid $8 on the contract of purchase; $100 on October 10th of that year, and $200 on November 23d, all of which the plaintiff duly placed as a credit on the contract of purchase. During the year of 1901 the defendant with his family continued to live upon the place under his right as purchaser, during which time and up to the fall of that year the plaintiff, though seeing defendant frequently, made no demand for a payment on the purchase money and expressed no purpose to rescind.

In the fall of the last named year, defendant having bought his supplies from plaintiff (who was a merchant in a nearby town), took him his cotton, sold it to him at current prices, receiving some cash and paying his annual account. Plaintiff asked defendant if he wanted to pay his cotton on his account or on his land. He replied that he wished his account paid. This, however, was not said in connection with any demand on the part of the plaintiff for the money due on the land, nor with respect to any intimation that the postponement of such a payment was not satisfactory to the plaintiff. Later during this same fall plaintiff told defendant that his time was up on the land and that he, defendant, would have to come in and make a new contract therefor. This was all that was said, and defendant, not understanding just what was meant, agreed to come in and execute a new agreement if plaintiff would write it. For this purpose defendant came in several times, but on each occasion he was advised by plaintiff that the paper had not been written for want of time. Nothing more definite was further said. Defendant did not understand the new contract meant a rescission of the trade, and he continued to live on and cultivate the place until the fall of 1902. He then brought in his cotton, disposed of it to the plaintiff, who credited his account with enough to discharge it, paid defendant some cash as usual, and still up to November 1, 1902, said nothing about rescission or rent.

During his occupancy under the contract of sale defendant had cleared thirty or forty acres of land on the place, made some minor improvements, and lands had advanced until his purchase was worth more than double its original value.

On November 1, 1902, defendant delivered to the plaintiff six bales of cotton and the plaintiff then for the first time claimed a forfeiture, claimed rent for that year equal to one-fourth of all the cotton defendant had raised, and deducted the sum (which amounted to $126.18) from the sum of the six bales. This was the first notice defendant had of any forfeiture and the first notice that plaintiff claimed rent for the place for that year. Defendant then offered to pay the balance due on the place, which was refused, and after some protest against plaintiff's course he left. Defendant continued to occupy the place, but in ignorance of his rights sought to rent other premises for the following year and paid rent from November 1st to November 25, 1902. On the 25th of November, however, he consulted an attorney, was advised that he could not thus be deprived of his rights, and again made an offer to pay in full for the place, leaving the amount due to the plaintiff's own calculation.

In answering in this cause he tendered the balance due. The payments made amounted to $450.65; amount tendered in court, $345.57—$796.22, covering the original amount and interest.

The rent of the place was worth $200 per year, the renter to keep up the premises.

In the fall of 1902, when plaintiff retained the sum as rent, defendant sought to compromise with him and offered as much as $1000 for the place, but plaintiff refused to allow him to have it for less than $1250.

Under the facts stated appellant contends that time was of the essence of the contract and that because defendant had defaulted, plaintiff by the mere force of his option might annul all that had been done and defeat the right to a deed upon prompt payment of the balance due. Appellant further contends that the action of the parties in the fall of 1902 in paying and accepting rent amounted to an oral annulment of the trade, and complains that the court erred in refusing to submit the issue to the jury.

Upon the first point there must be kept in mind the distinction which exists between a mere option to sell land wherein nothing has been done save to execute the writing, and that character of executory contract of sale of land where the parties have acted upon it, taken possession, made payments and improvements and otherwise, by reason of the forbearance of the seller, the vendee has changed his position for the worse.

In the class of contracts first named time is nearly always of the essence and the purchaser must promptly perform, else by the force of the terms of the contract upon which his rights once rested, they are destroyed.

The contract under consideration is of the second named class, not alone because it has been partly acted on, but because instead of containing a provision whereby it is changed upon default from a sale contract to one of rent, it contains a provision which merely permits the seller to exercise that option upon default.

We understand the law to be well settled that if under such a contract one has suffered a default to pass without complaint and thereafter treated the contract as continuing, he can thereafter revive his right to rescind only upon distinct notice of his purpose, and then the buyer has a reasonable time in which to comply.   Scarbrough v. Arrant, 25 Texas, 134; Hill v. Hill, 19 Texas, 78; Tom v. Wolhaefer, 61 Texas, 281; Moore v. Gesecke, 76 Texas, 549.

We do not review the authorities relied on by appellant, because they rest upon contracts clearly distinguishable from the one before us.

Upon the other point, conceding that the facts present the issue of an oral rescission in the fall of 1902, we are of opinion that against the plea of the statute of frauds it could not be enforced.

Under the first issue the jury has found that defendant has acquired vested rights in real estate.   Of these rights he could not divest himself by parol.   Sanborn v. Murphy, 5 Texas Civ. App., 509; Huffman v. Mulkey, 78 Texas, 561; Dial v. Crain, 10 Texas, 453.

Many complaints are presented against the charge of the court and many assignments are also addressed to his refusal to give special charges.   It would serve no useful purpose to discuss these points in detail.   The case seems to have been well tried and the main charge of the court clearly and simply states the law of the case.   Such refused special charges as embodied correct propositions of law applicable to the facts of this case were embodied in substance in the court's main charge.

We have carefully considered all the assignments and are of opinion that no reversible error is presented.

Costs were adjudged against defendant up to a certain point in the progress of the cause on account of certain defects in his pleadings which were later cured by amendment.   Appellant requests that in view of the insolvency of defendant the former be protected by some appropriate order in the collection of these costs.   The request is not resisted.

We therefore decree that the judgment for costs rendered by the court below against defendant be adjudged a lien upon the property in controversy until paid.

Finding no reversible error in the record, the judgment is affirmed.

*Affirmed.*