## BUCK v. DE SHAZO.   (No. 424.)

Court of Civil Appeals of Texas. Eastland.
April 6, 1928.

Rehearing Denied May 4, 1928.

1. Appeal and error ⊕═989—In determining whether judgment should be reversed, reviewing court must consider evidence tending to support judgment and disregard disputed testimony tending to show judgment was improper.

In testing correctness of claim that under pleadings and undisputed evidence judgment should be for plaintiff instead of defendant, it becomes reviewing court's duty to consider all competent evidence which is undisputed and all competent · evidence, though disputed, which tends to support judgment, and to disregard all disputed testimony tending to show that judgment was improper.

2. Specific performance ⊕═97(3)—Purchaser held not barred from specifically enforcing land contract by failure to pay all of purchase price, where tendering balance in pleadings.

Where purchaser had not paid all of purchase price of land nor certain sum when it became due, but in his pleadings in suit for specific performance of contract offered to pay balance due, held that the circumstances did not relieve vendor from obligation under contract, barring purchaser's right to specific performance.

3. Specific performance ⊕═61—Purchaser remaining in possession did not abandon contract as regards right to specific performance by statement that he would lose land if payment was not made.

In suit by purchaser to specifically enforce land contract, where purchaser made statement that if he did not pay sum as promised he would lose land, but parties both treated contract as in effect subsequently, and vendor accepted payment, purchaser remaining in possession of land either actually or by tenant held not to have abandoned contract, since such possession is regarded as continued assertion of purchaser's claim.

4. Vendor and purchaser ⊕═101—Vendor recognizing existence of contract could not rescind without notifying purchaser, and giving reasonable time within which purchaser might perform.

In suit by purchaser to compel specific performance of land contract where payment was overdue and vendor had granted indulgence, recognizing contract by acceptance of lease money as credit on purchase price, vendor had no right to rescind contract without notifying purchaser of purpose to do so and naming reasonable time in future when purchaser might perform his obligation, in default of which contract would be regarded as at an end.

5. Vendor and purchaser ⊕═187—Vendor waived time, if essence of contract, by treating contract as subsisting after specified time of performance.

In suit for specific performance of land contract brought by purchaser, where vendor had granted indulgence by recognizing existence of contract although time specified for payment had passed, held that if time was the essence of the agreement same was waived by treating contract as subsisting after specified time of performance.

6. Specific performance ⊕═92(1)—Where time is not of essence, time in which party in default may receive performance may be limited by giving reasonable notice.

Where time is not of essence, time in which party in default may have right to receive performance may be limited by party not in default giving reasonable notice that performance must be made by certain day, and equity will not enforce specific performance in behalf of party in default after day named if reasonable time is given, but if time named is not reasonable equity will not give any regard to it.

Error from District Court, Taylor County; M. S. Long, Judge.

Suit by F. H. Buck against D. W. De Shazo. Judgment for defendant and plaintiff brings error. Reversed and remanded.

Louis S. Wise and Ben L. Cox, both of Abilene, and H. S. Garrett, of Fort Worth, for plaintiff in error.

Scarborough & Wilson, of Abilene, for defendant in error.

FUNDERBURK, J.   The plaintiff in error, F. H. Buck, will be designated plaintiff as in the trial court, and defendant in error, D. W. De Shazo, will be designated as defendant. The suit is for specific performance of the following contract:

"State of Texas, County of Taylor:

"Entered into contract this day 4/21/24, between D. W. De Shazo and F. H. Buck. D. W. De Shazo agrees to sell to F. H. Buck a tract of land lying west of Mrs. F. H. Buck's place. Beginning at Mrs. F. H. Buck's S. W. corner extending west to D. W. De Shazo's west line; extending north to Mrs. F. H. Buck's west line; east to Mrs. F. H. Buck's N. W. corner to place of beginning. It is also agreed that if Mr. Claud Archer decides not to purchase other tract of land south, F. H. Buck agrees to buy this tract of land in connection with said mentioned tract.

"It is agreed that F. H. Buck is to pay $17 per acre for said tract of land, paying $300 by the 15 day of November, 1924. Mr. De Shazo is to reserve field on said tract for balance of year 1924.

"It is further agreed that if purchasing tract agreed to sell Mr. Claud Archer, F. H. Buck is to pay $150 in connection with said payment mentioned. Purchasing price of said tract is to be $15 per acre.

"It is further agreed that the balance of purchase price is to be divided into nine equal payments at the rate of interest at 8 per cent.

"D. W. De Shazo.
"F. H. Buck."

Plaintiff alleged the execution of the contract, that defendant placed him in posses-

sion of the land, more particularly describing the land, and that defendant agreed to ex- .ecute and deliver a deed conveying same to plaintiff when the latter had made the cash payment stipulated in the contract; that the total consideration was $1,764.50; that $993 (should be 893) thereof had been paid; and that plaintiff had complied with all the terms and conditions of the contract and has demanded the deed which had been refused. In his petition plaintiff makes offer to pay the balance of the purchase price and prays for judgment vesting in him title to the land.

Defendant in his answer, in addition to pleading a general denial, admitted the execution of the contract described in plaintiff's petition and alleged four reasons why he was released from further obligation on the agreement, namely: (1) That plaintiff failed to carry out said agreement; (2) that plaintiff abandoned the same; (3) that he failed to pay for said land, and (4) that he informed defendant that he could not carry out said agreement.

Judgment of the trial court was for the defendant. There are no findings of fact and conclusions of law. A statement of facts accompanies the record.

[1] Plaintiff contends that under the pleadings and the undisputed evidence the judgment should have been for him instead of defendant. In testing the correctness of this claim it becomes our duty to consider all the competent evidence which is undisputed and all competent evidence, though disputed, which tends to support the judgment, and to disregard all disputed testimony tending to show that the judgment was improper. Guided by this rule we find that the evidence shows that the contract set out above was, in fact, made; that in the fall of 1924 plaintiff paid $100 of the $450 and interest due; that plaintiff built a house on the land; that besides the $100 payment in 1924, defendant, in the fall of 1925, purchased a house of plaintiff for $200, a granary for $50, a cowshed for $35, and a hog for $16, all of which amounts were by agreement credited as payments on the land. About the same time plaintiff agreed to make another payment of $100 in the spring of 1926, and stated that if he did not do so he would lose the place. In the fall of 1925 plaintiff and defendant had an agreement by which defendant was to rent or have the use of the land for the year 1926 for the sum of $100. The $100 was to be credited as a payment of the land, upon condition, however, that plaintiff should proceed with his payments of the balance of the purchase price due. Plaintiff did not make the $100 payment in the spring of 1926, but thereafter both parties were treating the contract as in force, and as late as September, 1926, an oil and gas lease on the land was given for $3 per acre, aggregating $325.80, which was by agreement credited on the price of the land, upon condition, however, that plaintiff go

ahead with the purchase and pay for the land. A short time after the lease was given defendant declared to the plaintiff his intention not to make a deed to him of the land, and suit was filed October 8, 1926.

In 1924, by agreement of plaintiff and defendant, the land was mortgaged to the Federal Farm Loan Bank to secure payment of the sum of $868.80, which defendant got and used in payment of his own debts. With reference to this farm loan transaction, plaintiff by his testimony claimed that the amount of the loan was to be allowed on the purchase price. Defendant disputes this claim, if we understand his testimony on this point, which is as follows:

"I was to sell him (plaintiff) the land clear of these liens, one tract at $15 and one at $17 an acre, and after I got the loan I was to take his notes and he was to pay me for the land and let me owe the loan."

We find there is no necessity for our determining whether we are required to give credence to defendant's claim with reference to this loan as against the apparently more reasonable claim of the plaintiff. To us it sems almost incredible that one man having bought a tract of land wholly on credit should thereafter permit the seller to place a first mortgage lien on the land to raise money for his own use and to agree that he will pay to the seller the full amount of the purchase price without claiming credit on such purchase price for the amount of the loan. However this may be, plaintiff's pleading excludes any claim that the amount of the loan was to be paid as a part of the purchase price of the land.

[2] As we view the record in this case, neither the fact that the plaintiff had not paid all of the purchase price of the land, nor the fact that he had not paid the sum of $450 in the spring of 1924, presents any insuperable obstacle to the right of plaintiff to enforce specific performance. In his pleading plaintiff offered to pay the balance due. Unless his right to demand specific performance was otherwise extinguished before bringing the suit, the fact that some of the purchase price had not been paid, and even had not been paid according to agreement, would not relieve him of the performance of his contract. Moore v. Giesecke, 76 Tex. 543, 13 S. W. 290; Moore v. Brown, 46 Tex. Civ. App. 523, 103 S. W. 242; Hamblen v. Folts, 70 Tex. 134, 7 S. W. 836. We therefore conclude that defendant was not relieved of his obligations under the contract for the first reason claimed that plaintiff had failed to carry out his agreement, or the third reason, that plaintiff had failed to pay for said land.

[3] We also fail to find any sufficient evidence to show that plaintiff had abandoned the contract. The nearest approach which any of the evidence makes to proof of abandonment is the statement of the plaintiff

made in the fall of 1925, to the effect that if he did not pay $100 as promised in the spring of 1926 he would lose the land. If abandonment could be inferred from the fact that the $100 was not paid, such inference is destroyed by the fact that some time afterwards the parties were both treating the contract as in effect, and it was after said time that the money for the lease was accepted by defendant as a payment on the place. It is to be remembered also that the plaintiff was in possession of the land, either actually or by defendant as his tenant. Such possession is to be regarded as a continued assertion of his claim and is inconsistent with any inference of abandonment. 36 Cyc. 732.

There is likewise an absence of evidence that plaintiff had informed the defendant that he could not carry out the agreement. On the contrary, as we read the record, it was the defendant who was insisting that plaintiff could not pay for the land and should give it up, while plaintiff kept insisting that he would procure a loan or make other arrangements to enable him to get the land.

[4-6] We have concluded that, in view of the indulgences which defendant had granted to plaintiff up to September, 1926, and in view of the fact that up to said time defendant recognized the existence of the contract, and at least conditionally accepted the lease money as a credit on the purchase price, defendant had no right to rescind the contract without notifying the plaintiff of his purpose to do so and naming some reasonable time in the future when plaintiff might perform his obligation in default of which the contract would be regarded as at an end. There is nothing in the contract to suggest that time was of the essence of the agreement. Even if such had been the case, same was waived by treating the contract as subsisting after the specified time of performance. The rule is, stated in the language of eminent authority:

"Where time is not of the essence, the time in which the party in default may have a right to receive performance may be limited by the party not in default giving reasonable notice that performance must be made by a certain day. If a reasonable time after receipt of the notice is thus given the party in default, equity will not enforce specific performance in his behalf after the day named. But if the time named is not reasonable, equity will not give any regard to it. Thus a notice to perform immediately or abandon the contract has no effect, and a notice of some weeks may be too short if the party in default cannot by reasonable activity be ready to perform in that time." Pomeroy's Equitable Remedies, § 2237.

Another text-writer states the rule as follows:

"And if no particular time of payment is specified in a contract for the sale of land or time is not made of the essence, and the vendor permits more than a reasonable time to elapse before payment of the purchase money, he will be deemed to have waived prompt payment thereof, and cannot rescind the contract without first giving the vendee notice of his purpose to require the purchase money to be paid within some reasonable period." Black on Rescission and Cancellation, § 570.

The authority cited as supporting the text is the Texas case of Reddin's Heirs v. Smith, 65 Tex. 26.

Because of the complete absence of evidence showing that notice was given to the plaintiff that rescission of the contract would be claimed at some future time, and which, under the circumstance would constitute reasonable notice, the judgment must be reversed.

We are unable, however, to render judgment for the plaintiff. The record suggests that fuller accounting is required before a proper decree can be entered awarding the land to plaintiff. There should be some determination of the status of the federal farm loan. Defendant testified that he had not only paid interest on the loan, but that he had paid taxes on the land. Specific performance being a peculiarly equitable proceeding, the evidence upon another trial may show that it is proper to require that the defendant be reimbursed for tax payments, and for interest payments on the farm loan, according to whether the loan is credited on the purchase price or not. The case will therefore be reversed and remanded for another trial.

**Reversed and remanded.**